**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 24-253<br>25-110** |
| **JAHLIL WILLIAMS<br>a/k/a "Bill"<br>a/k/a "25th Street Bill"<br>a/k/a "Kill Bill"** | :<br><br>: | |

# GOVERNMENT'S CHANGE OF PLEA MEMORANDUM

## I. BACKGROUND

Defendant Jahlil Williams is charged in Criminal No. 24-253 with conspiracy to participate in the affairs of a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) (Count One); conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Counts Two and Four); murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Counts Three and Five); assault with a dangerous weapon in aid of racketeering, and aiding and abetting, in violation of 18 U.S.C. §§ 1959(a)(3) and 2 (Counts Six and Seven); conspiracy to commit counterfeiting, in violation of 18 U.S.C. § 371 (Count Eight); and conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (Count Nine).

The charges arise from Williams's leadership of and participation in OMERTA, a Philadelphia-based organized crime group operating primarily in the Strawberry Mansion neighborhood of North Philadelphia. Williams's role in OMERTA involved murders and murder-for-hire, assaults with dangerous weapons, firearms, counterfeiting, mail and wire fraud, and other racketeering activity. The charged conduct includes Williams's participation in conspiracies to commit murder that resulted in the death of C.J. on September 29, 2021, and the death of S.J. on November 29, 2021, as well as the shootings and assaults of K.P. and S.D.

during the September 29, 2021, attack.

Williams is also charged in Criminal No. 25-110 with conspiracy, in violation of 18 U.S.C. § 371 (Count One); providing contraband to a prison inmate, and aiding and abetting, in violation of 18 U.S.C. §§ 1791(a)(1), (b)(1), (b)(4) and 2 (Count Two); and possession of contraband as a prison inmate, in violation of 18 U.S.C. §§ 1791(a)(2) and (b)(1) (Counts Four and Five). Those charges arise from Williams's participation in a scheme to smuggle contraband, including buprenorphine/Suboxone and a cellular telephone, into the Federal Detention Center in Philadelphia, Pennsylvania, and his subsequent possession of Suboxone while incarcerated there.

The defendant has notified the government through counsel that he wishes to plead guilty pursuant to a written guilty plea agreement to Counts One, Two, Four, Six, Seven, Eight, and Nine of the Superseding Indictment in Criminal No. 24-253 and Counts One, Two, Four, and Five of the Superseding Indictment in Criminal No. 25-110. The plea agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

## II. APPLICABLE STATUTES AND ESSENTIAL ELEMENTS OF THE OFFENSES

### A. Conspiracy to Participate in a Racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962 (Criminal No. 24-253, Count One).

To establish a conspiracy to participate in a racketeering ("RICO") enterprise, in violation of 18 U.S.C. § 1962(d), the government must prove the following elements beyond a reasonable doubt:

(1) That two or more persons agreed to conduct or to participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity;

(2) That the defendant was party to or member of that agreement; and

(3) That the defendant joined the agreement or conspiracy knowing of its objective to conduct or participate … in the conduct of an enterprise's affairs through a pattern of racketeering activity, and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve the objective of

conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity.

**B. Conspiracy to Commit Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Criminal No. 24-253, Counts Two and Four).**

To establish a conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), the government must prove the following elements beyond a reasonable doubt:

(1) The enterprise charged in the indictment existed;

(2) The enterprise was engaged in racketeering activity;

(3) The defendant was associated with the enterprise;

(4) The defendant knowingly agreed with at least one other person to commit murder in violation of Pennsylvania law;[1] and

(5) The defendant entered into that agreement for the purpose of gaining entrance to, maintaining, or increasing his, or someone's, position in the enterprise.

**C. Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. 18 U.S.C. §§ 1959(a)(3) and 2 (Criminal No. 24-253, Counts Six and Seven)**

To establish assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3), the government must prove the following elements beyond a reasonable doubt.

(1) The enterprise charged in the indictment existed;

(2) The enterprise was engaged in racketeering activity;

---

[1] Title 18, Pennsylvania Consolidated Statutes Annotated, Section 2502(a), provides in pertinent part, that:

(a) Murder of the first degree— a criminal homicide constitutes murder in the first degree when it is committed by an intentional killing;
(b) Murder of the second degree—a criminal homicide constitutes murder of the second degree when it is committed while a defendant was engaged as a principal or an accomplice in the perpetration of a felony;
(c) Murder of the third degree—all other kinds of murder shall be murder of the third degree;

and defines an "intentional killing" as any "killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing."

Title 18, Pennsylvania Consolidated Statutes Annotated, Section 2501 states, "a person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being."

(3) The defendant was associated with the enterprise;
(4) The defendant knowingly committed, or aided and abetted an assault with a dangerous weapons in violation of Pennsylvania law; and

(5) The defendant committed the assault for the purpose of gaining entrance to, maintaining, or increasing his or another persons' position in the enterprise, or for pecuniary gain.

**D. Aiding and Abetting, in Violation of 18 U.S.C. § 2**

To prove the defendant guilty of aiding and abetting, the government must prove each of the following elements beyond a reasonable doubt:

(1) That another person committed the offense charged by committing each of the element of the offense;

(2) That the defendant knew that the offense charged was going to be committed or was being committed by another person;

(3) That the defendant knowingly did some act for the purpose of aiding, assisting, soliciting, facilitation or encouraging the other person in committing the specific offense charged and with the intent that the offense be committed; and

(4) That the defendant performed an act in furtherance of the offense charged.

**E. Conspiracy to Commit Counterfeiting, in violation of 18 U.S.C. § 371 (Criminal No. 24-253, Count Eight).**

To prove a defendant guilty of conspiracy, the government must prove the following elements beyond a reasonable doubt:

(1) Two or more persons agreed to commit an offense against the United States as charged in the indictment;

(2) The defendant was a party to or a member of that agreement;

(3) The defendant joined the agreement or conspiracy knowing of its objective to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve that objective;

(4) The defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective, to commit an offense against the United States; and

(5) At some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.

To prove a defendant guilty of defendant guilty of counterfeiting, the government must prove the following elements beyond a reasonable doubt:

(1) That the defendant possessed [passed] [uttered] [published] [sold] [attempted to pass] [attempted to utter] [attempted to publish] [attempted to sell] counterfeit money;

(2) That the defendant knew at the time that the money was counterfeit; and

(3) That the defendant possessed [passed] [uttered] [published] [sold] [attempted to pass] [attempted to utter] [attempted to publish] [attempted to sell] the counterfeit money with intent to defraud, that is, intending to cheat someone by making that person think the money was real.

*See* Third Circuit Model Criminal Jury Instruction 6.18.371A; *see also United States v. Jenkins*, No. CR.A. 04-506-2, 2006 WL 3254528, at *2 (E.D. Pa. Nov. 9, 2006) ("To convict for conspiracy, the government must prove beyond a reasonable doubt: (1) an agreement to commit a substantive offense; and (2) an overt act.") (internal citations omitted). See Fifth Circuit Model Criminal Charge, 18 U.S.C. § 472.

**F. Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. § 1349 (Count Nine)**

To establish the crime of conspiracy to commit mail or wire fraud, in violation of 18 U.S.C. § 1349, the government must prove the following elements:

(1) Two or more persons agreed to commit a common and unlawful plan to commit mail or wire fraud, as charged in the indictment;

(2) The defendant was a party to or member of the agreement; and

(3) The defendant joined the agreement or conspiracy knowing of its objectives to commit mail or wire fraud and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve common goals or objectives, to commit mail and wire fraud.

*See* 3rd Cir. Model Jury Instruction 6.18.371A; 11th Cir. Pattern Jury Instruction C.1.154 (2010).

With respect to the substantive mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, the government must show that:

(1) The defendant knowingly devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations, or promises;

(2) The defendant acted with the intent to defraud; and

(3) In advancing, furthering, or carrying out the scheme, the defendant communicated by interstate wire or caused the transmission of an interstate wire or in advancing, furthering, or carrying out the scheme, the defendant used the mails (or a private or commercial interstate carrier) or caused the mails (or a private or commercial interstate carrier) to be used.

*See* 3rd Cir. Model Jury Instruction 6.18.1343 and Third Cir. Model Jury Inst. 6.18.1341.

### G. Conspiracy, in violation of 18 U.S.C. § 371 (Criminal No. 25-110, Count One)

To obtain a conviction for conspiracy in violation of 18 U.S.C. § 371, the government must prove beyond a reasonable doubt that:

(1) Two or more persons agreed to commit an offense against the United States, as charged in the indictment;

(2) The defendant was a party to or member of that agreement;

(3) The defendant joined the agreement or conspiracy knowing of its objective to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve that objective; that is, the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective, to commit an offense against the United States; and

(4) At some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement.

See Third Circuit Model Criminal Jury Instruction 6.18.371A.

### H. Providing Contraband to a Prison Inmate, and aiding and abetting, in violation of 18 U.S.C. §§ 1791(a)(1) and 2 (Criminal No. 25-110, Count Two)

To obtain a conviction for providing contraband to a prison inmate in violation of 18 U.S.C. § 1791(a)(1), the government must prove beyond a reasonable doubt that**:**

(1) The defendant knowingly provided an object to an inmate of a prison; and

(2) The object was prohibited.

*See United States v. Holmes*, 607 F.3d 332, 335-36 (3d Cir. 2010). The government need not prove that the defendant knew that the object was prohibited. *See id.*[2]

### I. Possession of Contraband as a Prison Inmate, in violation of 18 U.S.C. § 1791(a)(2) (Criminal No. 25-110, Counts Four and Five)

[2] The definition of aiding and abetting was provided above and applies here as well.

To obtain a conviction for possession of contraband as a prison inmate in violation of 18 U.S.C. § 1791(a)(2), the government must prove beyond a reasonable doubt that:

(1) The defendant was an inmate of a prison;

(2) The defendant knowingly possessed an object; and

(3) The object was prohibited.

*See United States v. Holmes*, 607 F.3d 332, 335-36 (3d Cir. 2010). The government need not prove that the defendant knew that the object was prohibited. *See id*.

## III. MAXIMUM PENALTIES

In Criminal No. 24-253, the maximum sentence for Count One, conspiracy to participate in a racketeering enterprise, is up to life imprisonment, a five-year period of supervised release, a $250,000 fine, and a $100 special assessment.

The maximum sentence for each of Counts Two and Four, conspiracy to commit murder in aid of racketeering, is 10 years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

The maximum sentence for each of Counts Six and Seven, assault with a dangerous weapon in aid of racketeering, is 20 years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

The maximum sentence for Count Eight, conspiracy to commit counterfeiting, is five years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

The maximum sentence for Count Nine, conspiracy to commit mail and wire fraud, is 20 years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

In Criminal No. 25-110, the maximum sentence for Count One, conspiracy, is five years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

The maximum sentence for Count Two, providing contraband to a prison inmate and aiding and abetting, is 20 years' imprisonment, five years of supervised release, a $250,000 fine, and a $100 special assessment, if the contraband is Suboxone or another type of narcotic drug.

The maximum sentence for each of Counts Four and Five, possession of contraband as a prison inmate, is five years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

The total maximum penalty is life imprisonment, a five-year period of supervised release, a $2,750,000 fine, and $1,100 in special assessments. Restitution may also be ordered.

## IV. FACTUAL BASIS FOR THE PLEA

If these cases were to proceed to trial, the government would prove the following facts, among others, through witness testimony and exhibits. This memorandum sets forth only the essential facts necessary to establish the elements of the offenses to which the defendant will plead guilty.

### A. CRIMINAL NO. 24-253

#### 1. Count One – Conspiracy to Participate in the Affairs of an Enterprise Through a Pattern of Racketeering Activity, in violation of 18 U.S.C. § 1962(d)

From at least in or about August 2018 through in or about August 2023, defendant Jahlil Williams, a/k/a "Bill," a/k/a "25th Street Bill," a/k/a "Kill Bill," conspired with others to conduct and participate, directly and indirectly, in the affairs of an enterprise known as OMERTA through a pattern of racketeering activity consisting of acts involving murder, murder-for-hire, assaults with dangerous weapons, counterfeiting, mail and wire fraud, firearms offenses, drug trafficking, and other criminal activity.

OMERTA was a violent, neighborhood-based criminal organization comprised primarily of individuals operating within a section of North Philadelphia, particularly the Strawberry

Mansion neighborhood, as well as elsewhere in Pennsylvania and neighboring states. OMERTA members and associates identified themselves with the name "OMERTA" and promoted their allegiance to the group and its territory through social media, music, music videos, and clothing.

The purposes of the OMERTA enterprise included enriching its members and associates through criminal activity, including counterfeiting United States currency, robbery, drug trafficking, fraud, and murder-for-hire; maintaining and protecting the power and territory of the enterprise through intimidation, threats, violence, and murder; retaliating against rivals and individuals believed to have harmed or disrespected OMERTA members; obtaining and distributing firearms; and promoting OMERTA's reputation and influence.

Williams was a leader of OMERTA. In that role, Williams participated in and directed criminal activity involving murders and murder-for-hire, assaults with dangerous weapons, firearms, counterfeiting, mail and wire fraud, and other offenses. Williams ordered or arranged acts of violence against individuals whom he believed had disrespected OMERTA or against whom he believed a "bounty" had been placed. He helped direct retaliation against rival gang members and others believed to have harmed OMERTA members, maintained relationships with allied gangs and gang members, planned criminal activity, and recruited or convinced other individuals to participate in crimes on behalf of the enterprise.

Among other acts, Williams participated in the murder conspiracy that resulted in the death of C.J. and the wounding of K.P. and S.D. on September 29, 2021. He also joined the conspiracy to murder S.J. on November 29, 2021. Williams further participated in counterfeiting, fraudulent applications for Pandemic Unemployment Assistance benefits, firearms possession, and drug trafficking.

Through these acts and others, the government would prove beyond a reasonable doubt that Williams knowingly joined an agreement with other OMERTA members to participate in the affairs of the enterprise through a pattern of racketeering activity.

**2. Count Two – Conspiracy to Commit Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5)**

On or about November 29, 2021, in Philadelphia, in the Eastern District of Pennsylvania, Williams conspired and agreed with other OMERTA members to commit the knowing and intentional murder of S.J. The conspiracy was undertaken for the purpose of maintaining and increasing Williams's and others' positions in OMERTA.

On November 29, 2021, members of the Philadelphia Police Department responded to a reported shooting near 131 West Wyoming Avenue in Philadelphia. Officers located 14-year-old S.J. suffering from multiple gunshot wounds to his torso. S.J. was transported to Temple University Hospital, where he was pronounced dead.

Crime Scene Unit personnel recovered substantial ballistic evidence from the scene, including fourteen fired .40 caliber cartridge casings and twenty-three fired 9mm cartridge casings. Additional ballistic evidence was recovered from S.J.'s body during the autopsy.

Investigators quickly learned that the shooting was a coordinated attack. A witness reported observing two vehicles approaching S.J. before multiple armed individuals exited the vehicles and opened fire. As S.J. attempted to flee, he fell to the ground, at which point one of the assailants continued shooting him. The shooters then returned to the vehicles and fled the area.

The witness followed the fleeing vehicles to the 5400 block of North 6th Street, where the vehicles parked outside 5449 North 6th Street, Williams's residence. Multiple individuals exited the vehicles and entered the residence.

Police detained individuals leaving the residence and subsequently executed a search warrant there. During the search, officers recovered four handguns from a hallway closet, including a Glock 22 loaded with an extended magazine, a stolen Glock 23, a Glock 19 with an obliterated serial number, and a Taurus G3 9mm handgun. Ballistics testing established that shell casings recovered from the murder scene had been fired from three of the four firearms recovered from Williams's residence. Williams fled from the house and was ultimately arrest in Georgia and fleeing the jurisdiction.

DNA and fingerprint evidence further connected the participants to the homicide. Defendant Roberson's DNA was recovered from the steering wheel of one of the vehicles used in the shooting. Co-defendant Rahmeir Hayes's DNA was recovered from a lighter found inside that same vehicle, and Hayes's fingerprint was recovered from the second vehicle used in the attack. Investigators also recovered co-defendant Kyair Garnett's DNA from one of the firearms used in the murder.

The government's evidence would include, among other things, witness testimony, physical evidence, firearms evidence, communications evidence, social media evidence, and other evidence establishing Williams's participation in the OMERTA enterprise, the murder conspiracy, and the murder of S.J. Through the above facts and others, the government would prove beyond a reasonable doubt that defendant Williams knowingly and willfully joined the conspiracy to murder S.J. in aid of racketeering, and that the murder of S.J. violated Pennsylvania law, including Title 18, Pennsylvania Consolidated Statutes Annotated, Sections 903 and 2502(a).

### 3. Count Four – Conspiracy to Commit Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5)

On or about September 29, 2021, in Philadelphia, in the Eastern District of Pennsylvania, Williams conspired and agreed with other OMERTA members and associates to commit an intentional murder. Williams entered into the conspiracy for the purpose of maintaining and increasing his and others' positions in OMERTA and for pecuniary gain.

Williams, a leader of OMERTA, sought individuals to assist him in carrying out a murder for hire. Defendant Haneef Roberson initially volunteered to participate in carrying out the murder and traveled, armed with a firearm, to the location where the intended victim was believed to be, but Roberson was unable to complete the killing.

Williams then tasked other OMERTA associates with carrying out the murder. Williams and the associates used Instagram and other electronic communications in connection with the plan. Williams and the associates then ambushed who they believed to be the intended murder victim in the area of 33rd and Diamond Street, killing the wrong individual, C.J., and shooting two others K.P and S.D.

Specifically, on September 29, 2021, Philadelphia police responded to a shooting at 2001 North 33rd Street. Police found C.J. inside a vehicle suffering from multiple gunshot wounds. She was transported to Penn Presbyterian Medical Center, where she was pronounced dead. Two other victims, K.P. and S.D., were also shot but survived.

Crime Scene Unit personnel located multiple vehicles with bullet strikes and recovered approximately fifty fired cartridge casings. The evidence established that the OMERTA associates acting at Williams's direction had attacked the wrong individuals, resulting in C.J.'s death and the shootings of K.P. and S.D.

The government's evidence would include witness testimony, physical evidence, firearms evidence, communications and social media evidence, and other evidence establishing Williams's leadership role in OMERTA, his direction of the murder-for-hire plot, and his participation in the murder conspiracy.

Through this evidence and other evidence, the government would prove beyond a reasonable doubt that Williams knowingly and willfully joined and directed a conspiracy to commit murder in aid of racketeering, which resulted in the murder of C.J. and the wounding of K.P. and S.D.

#### 4. Counts Six and Seven – Assault with a Dangerous Weapon in Aid of Racketeering, in violation of 18 U.S.C. §§ 1959(a)(3) and 2

The September 29, 2021, shooting described above also resulted in the firearm assaults of K.P. and S.D. Williams planned and directed the murder-for-hire attack and tasked OMERTA associates with carrying it out. Acting in furtherance of that plan, armed OMERTA associates ambushed the occupants of vehicles in the area of 33rd and Diamond Streets and repeatedly fired at them. The attack killed C.J. and caused gunshot wounds to K.P. and S.D.

Williams knowingly and intentionally participated in and aided and abetted the assaults of K.P. and S.D. with dangerous weapons, namely firearms. Williams participated in those assaults for the purpose of maintaining and increasing his position and the positions of other members of OMERTA and for pecuniary gain.

Through witness testimony, physical and ballistics evidence, electronic communications, social media evidence, and other evidence, the government would prove beyond a reasonable doubt that Williams knowingly committed and aided and abetted the assaults with dangerous weapons charged in Counts Six and Seven.

**5. Count Eight – Conspiracy to Commit Counterfeiting, in violation of 18 U.S.C. § 371**

From in or about 2018 through in or about 2023, within the Eastern District of Pennsylvania and elsewhere, defendant Jahlil Williams conspired with other OMERTA members to produce, possess, and pass counterfeit United States currency

OMERTA utilized counterfeit currency as one of its primary funding sources. Members of the organization obtained counterfeit bills through criminal contacts and sought to exchange the counterfeit money for genuine currency or goods at commercial establishments throughout Pennsylvania and other states. Over a five-year period, members of OMERTA attempted to pass, or successfully passed, counterfeit currency valued at over $1.2 million, much of it bearing identical serial numbers, indicating production in bulk by a common source. When OMERTA members attempted to use counterfeit bills and were confronted by store employees, they often resorted to threats, intimidation, or violence to complete their transactions or to rob the stores of legitimate cash. Members also used counterfeit currency to fund other criminal activities and to purchase firearms, drugs, and vehicles for use by the enterprise.

The government's evidence would include surveillance video, witness testimony from store employees, receipts, Secret Service counterfeit analyses, and seized counterfeit notes, and it would establish the following overt acts by Williams:

- August 10, 2019: defendants Jahilil Williams and Kyair Garnett, and co-conspirator Tahir Rivers possessed and passed counterfeit United States currency at Modell's and Uniqlo, retail stores on the 1600 block of Walnut Street in Philadelphia, Pennsylvania.

- September 27, 2019: defendant Jahlil Williams possessed and passed counterfeit United States currency at the Five Below store, at 147 East Swedesford Road, Wayne, Pennsylvania.
- January 16, 2020: defendant Jahlil Williams and co-conspirators possessed and passed counterfeit United States currency at the Ulta Beauty store, at 40 Town Center Drive, Collegeville, Pennsylvania.

Through this evidence, the government would establish that defendant Williams knowingly agreed with others to engage in the passing of counterfeit currency and to use the proceeds to finance OMERTA's activities, in violation of federal law.

**6. Count Nine – Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. § 1349**

From in or about March 2020 through in or about September 2021, within the Eastern District of Pennsylvania and elsewhere, Williams conspired with co-defendants and others to devise and execute a scheme to defraud the United States and the Commonwealth of Pennsylvania by obtaining fraudulent Pandemic Unemployment Assistance ("PUA") benefits.

The PUA program was established under the CARES Act to provide temporary financial assistance to individuals who were unemployed as a direct result of the COVID-19 pandemic. In Pennsylvania, the program was administered by the Pennsylvania Department of Labor and Industry ("PA DLI") using federal funds. Applications were submitted and processed online, and benefits were distributed through debit cards sent through the mails or by electronic transfers. Williams and other OMERTA members used social media, including Instagram group chats, to discuss the submission of fraudulent applications and to share information and instructions necessary to complete the applications.

For example, on or about May 25, 2020, a participant in an Instagram group chat that included Williams and other OMERTA members asked for the "unemployment link." Members of the group responded with information regarding the PUA application process and where to file applications.

On or about June 22, 2020, Williams, under penalty of perjury, electronically filed a fraudulent application for Pennsylvania PUA benefits. The application falsely represented that Williams was unemployed because of the COVID-19 pandemic and was seeking employment. Based on these false representations, PA DLI approved the application and caused PUA benefits to be distributed to Williams, totaling approximately $38,365.

The conspiracy was extensive. Other OMERTA members, including Haneef Roberson, Rakeim Savage, Kyair Garnett, Biheis Moore, Rakiem King, and Ward Roberts, filed similar fraudulent applications. In total, the conspiracy caused the government to disburse at least $443,700 in fraudulent benefits.

The government's evidence would include PUA application records, electronic and IP-address records, bank and debit-card records, mailing records, and social media communications concerning the submission of claims and sharing of information necessary to obtain benefits. Through this evidence and other evidence, the government would prove beyond a reasonable doubt that Williams knowingly and willfully joined an agreement to commit mail and wire fraud through the submission of materially false PUA benefit claims.

## B. CRIMINAL NO. 25-110

### 1. Counts One and Two – Conspiracy and Providing Contraband to a Prison Inmate and Aiding and Abetting, in violation of 18 U.S.C. §§ 371, 1791(a)(1), (b)(1), (b)(4) and 2.

On January 13, 2025, Paul DiMaio, a criminal defense attorney, and Jahlil Williams, a Federal Detention Center – Philadelphia ("FDC") inmate, had a legal visit at the FDC, even though DiMaio was not representing Williams. On February 1, Jada Williams, Jahlil's sister, asked DiMaio for his Cash App account and then sent DiMaio $2,000 through Cash App. Two days later, at 7:30 a.m., DiMaio and Jahlil Williams spoke on a three-way call. DiMaio told Jahlil, "I've got to come see you, I've got to see your buddy too."

Later, on February 3, 2025, at 6:13 p.m., Jahlil Williams made a three-way call with his sister Jada and Tanya Culver, his mother. Jahlil asked the Tanya to "take a picture of what you got" and "is it possible to get another one." Tanya responded by asking if Jahlil wanted "two" or "three." Jahlil then asked, "What was the plan, was it 50 dollars or 60 dollars?" Tanya responded, "25 dollars a month." Jahlil then asked, "Why would you get me that cheap ass plan, mom?"

Later that night, at 8:38 p.m., Jahlil Williams made another three-way call and asked Tanya, "Hey mom…can you charge it up?" An unidentified female can then be heard saying, "Make sure you charge that jawn up." When the Tanya asked if Jahlil needed a second item, Jahlil replied that he needed "just the cord." Tanya then stated, "I just talked to Mr. Paul too, I called Mr. Paul." Video from the FDC shows that Nyeem Thrones, another FDC inmate, stood next to Jahlil Williams during portions of this call.

In addition to the foregoing calls, Jada Williams texted DiMaio on February 3, "My mom is gonna take care of everything for me and drop it off to you by tonight if that's fine with you." DiMaio responded, "I'm tied up tonight with the family. Can she meet tomorrow morning?"

On the morning of February 4, Jahlil made a three-way call with Jada and Tanya. Jahlil asked Tanya if she had talked to a male. The defendant responded, "Who, Mr. Paul?" Jahlil Williams responded, "Yeah." The defendant then stated that she would call "Mr. Paul" and indicated that it cost her $300 to purchase a cell phone.

Later that morning, at 10:36 a.m., Jahlil called Jada and asked her to text Nyeem Thrones' name and BOP number to DiMaio. Jada then conducted a three-way call with Tanya. On the recorded line, the defendant stated, "I'm in the car with Mr. Paul." Jahlil stated, "Tell him I said don't forget nothing," to which Tanya responded, "I got you on speaker." Tanya then stated, "Jahlil said don't forget nothing," and a male voice replied, "Yeah, yeah."

On February 4, 2025, at 10:53 a.m., surveillance video recorded DiMaio entering the FDC with two "redweld" type folders. DiMaio carried the two redweld folders into a legal visitation room within the FDC, where he met with Thrones for 18 minutes. Following this meeting, DiMaio left the room with just one folder, and he gave the other folder to Thrones, so that Thrones could deliver it to Jahlil Williams. Surveillance video shows that Thrones did not carry any redweld folder into his meeting with DiMaio.

Officer James Tupper was stationed in the shakedown room adjacent to the legal visitation rooms, and he strip-searched Thrones on the way into the room, with negative results. Following the visit, Officer Tupper noticed that Thrones was carrying a red folder that he had not possessed 20 minutes earlier. Officer Tupper ran a metal detector over the folder, with a positive result. Prison personnel searched the folder, whereupon they found and

photographed a Motorola cell phone wrapped in cellophane, a charging cord, 83 strips of suboxone, and 240 loose cigarettes. Suboxone, cell phones, charging cords, and cigarettes are all prohibited objects that inmates at the FDC cannot possess.

**2. Count Four – Possession of Contraband as a Prison Inmate, in violation of 18 U.S.C. §§ 1791(a)(2) and (b)(1).**

On February 11, 2025, approximately one week after FDC personnel intercepted the contraband delivery described above, FDC personnel directed that Williams be searched for contraband. During that search, Officers discovered 78 strips of Suboxone concealed inside Williams's right sock. At the time, Williams was an inmate at the FDC. Williams knowingly possessed the Suboxone, and the Suboxone constituted a prohibited object that Williams was not permitted to possess in the institution.

The government would establish these facts through the testimony of FDC personnel, prison records, physical evidence, and forensic testing establishing the identity of the substance.

**3. Count Five – Possession of Contraband as a Prison Inmate, in violation of 18 U.S.C. §§ 1791(a)(2) and (b)(1)**

Following the February 11 recovery of Suboxone, Williams was moved to the Special Housing Unit at the FDC. On March 2, 2025, Williams was transferred to another cell in the Special Housing Unit. At that time, Williams was searched before the transfer. During that search, Officers located 14 strips of Suboxone wrapped in plastic in Williams's left chest pocket. At the time, Williams was an inmate at the FDC. Williams knowingly possessed the Suboxone, and the Suboxone constituted a prohibited object that he was not permitted to possess.

The government would establish these facts through the testimony of FDC personnel, prison records, physical evidence, and forensic testing establishing the identity of the substance.

## V. PLEA AGREEMENT

The parties have executed a written guilty plea agreement that will be presented to the Court during the hearing regarding entry of the defendant's guilty plea. The agreement includes a supplement to be filed under seal.

The plea agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The parties agree that the appropriate disposition of these cases is a sentence of 540 months' imprisonment, to run concurrently with the sentence imposed in Criminal No. 23-540, together with a term of supervised release and a fine, if any, to be determined by the Court, and $1,100 in special assessments.

At sentencing, the government may move to dismiss Counts Three and Five of the Superseding Indictment in Criminal No. 24-253, which charge Williams with murder in aid of racketeering and aiding and abetting. The defendant has also agreed to pay $38,365 in restitution.

## VI. CONCLUSION

The government requests that the Court conduct a hearing under Federal Rule of Criminal Procedure 11 and if warranted then accept the defendant's plea of guilty.

Respectfully submitted,

DAVID METCALF
United States Attorney

*<u>/s/ Everett Witherell</u>*
SHAYNA GANNONE
EVERETT WITHERELL
MEGHAN CLAIBORNE
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this Change of Plea Memorandum has been served by electronic mail on all Counsel of Record:

*/s/ Everett Witherell*
EVERETT WITHERELL
Assistant United States Attorney

DATED: October 28, 2026